Corporation. I'm going to start with Mr. Glipsenstein. There were two central errors of law that warrant vacating the decision below, reinstating the magistrate judge's claim construction for the disputed term socket and remand of this matter. With regard to the first set of errors, the district court judge resolved numerous factual disputes against my client, Team Worldwide. To take as just one example, the claim term electric pump. The construction for that term is not contested. Our expert tendered evidence that mapped court's construction to the aspects of the accused products. The district court, in considering that issue, never even addressed our expert's evidence on that point. In fact, the district court, in considering that issue, never even addressed the construction for that term in finding and accepting Intex's proposal on how that term should be applied in this case. Now, the second issue is one of claim construction, and that concerns the claim term socket. On that issue, the district court failed to defer in any way to the magistrate judge's decision, finding that that term should be construed to mean an opening or hollow that holds an inserted part. I thought what the magistrate said was it's perfectly apparent that there are a couple of possible meanings out there in the world. In order to decide which one is the governing one here, we look at the intrinsic evidence. So the starting point doesn't produce a single plain meaning. The dispositive considerations are all intrinsic evidence. And on that, as the Supreme Court just said, that's the note. But putting aside the Rule 72 business. The magistrate judge looked, as we submit as appropriate, to the variety of dictionary definitions that were in evidence. Considered the range of those dictionary definitions. Frankly, they all sort of coalesce around the construction that the magistrate judge in fact adopted, which was in fact taken from the Webster's dictionary definition that was in the record. She then appropriately, per Phillips, considered the intrinsic evidence. Did not see evidence of disclaimers. Did not see evidence of lexicography. Reviewed the fact that claim language in a related case in fact included the word detachable in describing the connection between the electric pump and the socket. And from the basis of her review of the intrinsic evidence, saw no reason to depart from the ordinary meaning as informed by the extensive dictionary definitions in the record. So with regard to the first part of her analysis, I think the record is clear that she did consider extrinsic evidence and then again appropriately reviewed intrinsic evidence to consider whether there were disclaimers or disavows in the record that would depart from that. Now the magistrate judge in considering, I'm sorry, excuse me, the district court judge in considering the magistrate judge's claim construction order followed this court's authority in the Cyborg case and concluded that no deference was warranted. Can I ask you, is it not common practice in district courts to give de novo review to claim construction opinions by magistrates, even claim construction opinions, whether or not they're called report and recommendation and whether or not they are accompanied by truly dispositive recommendations like grant summary judgment? Well, in this particular case, the order of reference was pursuant to Rule 72. And Rule 72 has two relevant parts, I think, in response to your question. One is for non-dispositive matters, and I think while we all understand and agree that there are certainly circumstances where claim construction can have sort of a dispositive effect on an aspect of a case, I don't believe that a claim construction order is a dispositive matter for purposes of Rule 72A. Right. I asked you, I guess, a question. To the extent you know, is it routine practice in the district courts to grant de novo review of claim construction opinions by magistrates? Your Honor, I'm sorry, I don't know the sort of prevalence of that at all. I have this one example where the district court judge at least believed that this was subject to Rule 72A. Right. The district judge here in a footnote says that might have been an independent basis for de novo review. Cites a couple of decisions. I started looking at those. They in turn cite others. And at least it's my general recollection that it's utterly routine that district judges give the claim construction process to the magistrate and then grant and then review it de novo because it is so often so close to dispositive as to be fairly within that language of Rule 72. Well, with regard to the policy underlying TEVA, I certainly could see post-TEVA why that practice, if it is in fact, as Your Honor suggests, to be fairly common to be de novo, I would submit that in most cases, I mean, prior to the TEVA decision two weeks ago, it simply didn't matter because of this court sideboard decision and the notion that it's de novo. Quite honestly, I'm not aware of a decision where this issue was actually framed for consideration because, again, I think as the district court acknowledged in the footnote that Your Honor refers to, it just simply didn't matter. But now it does. And so we're in a situation that frankly does have similarities to TEVA where a magistrate judge was charged with the task of reviewing both the intrinsic and the extrinsic record. Well, but I'm not sure I understand why this case would fall under TEVA's notion of increased deference. And the reason I say that is because what both the magistrate judge and the district court judge both seem to suggest was plain meaning of socket is known, accepted. Granted, what the district court judge said is there's two plain meanings, one in a mechanical sense, one in an anatomical sense. But neither of them seem to me needed to or made a credibility or fact determination that this dictionary definition is more appropriate than this one because I don't see how the extrinsic evidence here morphed the question into one in which deference is necessary because I didn't see either of them rely on it as the necessary predicate for their conclusion. Your Honor, I certainly see that and I should maybe preface my response to that by saying we don't see this as a case, frankly, where this deference issue has an impact ultimately on the correct claim construction. This is not a case where we say deference, you know, the answer changes. My point is simply when one looks at the magistrate judges But then here's my stupid question. I maybe just don't know the right answer to this question, but isn't a district court always permitted to reconsider a question of law decided by a magistrate judge? Doesn't 72 A and B not preclude a district court from reconsidering de novo any question of law resolved by a magistrate judge? Well, I think there's a question certainly in this case as to what happened ultimately on summary judgment where the district court further narrowed the construction. So there in response to Your Honor's question, I would say not without notice to the parties should the judge have further narrowed his construction and given us an opportunity to address that narrow construction. But in the general sense, yes. I mean, in the broad sense where a district court judge decides to revisit claim construction, again, provided that parties are given proper notice of that, yes, the district court judge can revise the construction. So that's why I say I don't think this deference issue matters so much here as it does sort of underscore what we submit was missing from the district court's approach to claim construction here. Fundamentally, the district court judge adopted a claim construction that plainly read in limitations from some of the embodiments in the specification and just as plainly excluded other embodiments in the specification. Why don't we start there? What was so wrong about the district court saying embodiments 8, 9, and 10, which are about chambers and motors and fans, aren't encompassed by these claims, which are referring to sockets and electric pumps, which really is what is being contemplated in embodiments 1 through 7? Well, I think three answers to that question, Judge Chen. I think if one sort of looks at the specification as a whole, this is a specification that is sort of well crafted. The early embodiments speak in detail about the implementations there. As we get to those later embodiments, 8, 9, and 10, what we see is sort of standard patent drafting where it is the differences, the delta, that are discussed in those later embodiments. There's nothing in the specification when... You're saying that embodiments 8, 9, and 10 are beginning to scope out on a broader, more conceptual level compared to the first seven embodiments? What I'm saying is that if one looks, for example, at embodiments 5 and 6, those embodiments discuss a waterproof switch configuration. If one then goes to embodiment 8, one sees the new concept there of deflation by reversing the direction of rotation of the fan motor. Using chambers and motors and fans? Well, certainly there were motors and fans in the earlier embodiments, but with regard to the word chamber, a chamber is clearly discussed in those embodiments 8 and 10, that the chamber is the hollow region that is formed. I'd like to draw the court's attention to embodiment 9, for example. Embodiment 9 does not use the word chamber at all. Does it use the word socket? Housing, right? It uses the word housing, and I think that's interesting and notable because embodiment 3 plainly says that the socket in embodiment 3 is a cylindrical housing. So now the reader comes a few columns later to embodiment 9 and sees a discussion of a housing that's also cylindrical. On what principle would that reader conclude that that cylindrical housing is not a socket, whereas the one that's described expressly as a socket in embodiment 3 is? These are simple structural issues, and there's no obligation on the patent drafter to repeat time and time again for every single embodiment the baseline principles that were established earlier on. And with regard to embodiment 8- You don't think different terms should be understood as the inventor contemplating different meanings? Well, there are different terms, but they're not, as Intex suggests and as the district court agreed, they are not antithetical terms. The socket is clearly described as the structure that defines a certain space. So we see a wide range of- You're rotating the pump into the socket. There's flanges and grooves. You're fitting in the pump into the socket. Well, for some sockets, some sockets are merely a ring of material. Other sockets are a cup-shaped cylindrical housing. That's the one in embodiment 3 and also in embodiment 7. So when the reader gets to embodiment 9 and sees a cup-shaped housing, there's absolutely no reason to think that that's not part of the invention just as the prior embodiments are. The similarities are much more apparent than the differences are. The differences go to variations on the core theme. You know, the core theme of this invention is the idea of recessing the pump and the pump body into the mattress itself. These notions of detachability were, frankly, in the prior arc. If you look at figure 1 in the patent, it shows a detachable motor. The suggestion that detachability would take on some patentable or some claim construction significance is really belied by the fact that the prior arc was detachable. Moreover, the applicant could not have been clearer during prosecution when amending the to point to embodiment 8, which is one of the so-called chamber embodiments, as an embodiment of the amended claims. The intrinsic record here simply could not be clearer. There's an express direction, if you will, in the prosecution history saying in the public record. What if we just conclude that was an overly exuberant citation of an additional site to the spec? Well, it's hard to see where the exuberance really lies. I mean, it was actually a very clear pointing in that comment to both the third embodiment and also the eighth embodiment. Do you have claims that are very clearly, tightly directed to embodiment 8, 9, and 10? Well, yes. I mean, the claims at issue in this case, 14 and 16, are... Besides the claims we're talking about on appeal. In this patent, no. Other patents? The only other issued patent is the 760 patent, I believe, and that's the one that I think is worth noting. Do you use words like chambers and motors and fans, any of those claims in 760? Those particular words, no. Claim 1 does talk about a socket, and it says in that claim that the socket is detachably connected. I'm sorry, the pump is detachably connected to the socket. If I look at this court's authority in, for example, the Rambus decision in 2012, which cites to Omega Engineering from 2003, it says, effectively, one can and should look at the usage of claim terms in related cases to understand how they should be construed in this case. So, I mean, in effect, substantively, one should be able to look at that other claim as though it is actually in this patent. And to say, you know, there's a claim where the patent applicant took pains to note that the relationship or the connection is detachable between the pump and the socket. Mr. Gleisenstein, you've exceeded your 15 minutes. In fact, you're at 16 minutes. I will restore some of your rebuttal time, but we should hear from Mr. Carter now. Thank you. Thank you. You may have pleased the court. And if I may begin, I would like to continue the discussion of the questioning, Judge Chinn, that you had for TWW's counsel, and that is, are there claims directed to the chamber embodiment? And, in fact, there were. They were pursued in another application that was not allowed by the Patent and Trademark Office. And even further, there are pending claims at the Patent and Trademark Office now of a pump that is connected directly to an inflatable body. Those claims have never been allowed after years of prosecution. TWW said the core theme in their patent is resetting the pump into the body. That is not the patent that we have here. We have a patent that is focused on having a socket as the connection between the pump and the inflatable body. TWW is currently trying to get claims with a pump directly connected to an inflatable body. What they say is the core theme. But after years and years of prosecution, the Patent and Trademark Office has not given them those claims, and they are now asking this court to do what it is the Patent and Trademark Office has never done. There are three. In those claims that you just referred to, do some of them at least make clear that this I do not know the answer to that question. I can look and get it in a second, but the key is that in the claims that are currently pending, it's the pump directly connected without specifically claiming, as we have in this case, the socket providing that connection. There are three independent reasons why Judge Freeman's summary judgment opinion should be affirmed. The first has nothing to do with the claim construction of socket, and that is that the claims as written are a pump connected to a socket. The pump and the socket are two separate, distinct structures. In this case, we just have a pump. We do not have a pump and a socket. The second and third reasons why Judge Freeman's summary judgment opinion should be affirmed are based on his construction of socket. The first point, am I remembering correctly, that their response is that essentially the housing is the socket. A pump is the stuff that gets inserted into the housing, and so if the district judge had only attended to their experts' explanation of what constitutes the pump, he would have seen that there is a socket and a pump? Yes, and I think on this issue, they take it a step further where they say you can take the pump housing and cut it. I guess take a jigsaw or something else and cut out the rim of the housing and say that that rim of the housing is the socket, and everything else is the pump connected to the socket. This court's case law on this issue is very clear that you cannot take here this pump and turn it into a socket and a pump. It's very similar to the Becton case where you could not take a hinge. So without reference to cases involving different language, why are the innards of this thing  The record on this that Judge Friedman has is very clear, looking at the evidence that was submitted, as opposed to attorney argument, is that for this device to work, as claimed, the claim says that the electric pump is connected to the socket to inflate the inflatable body. To inflate the inflatable body for the accused product, you need everything. The pump is the faceplate, the innards, and the housing. Did their experts say the opposite? That the housing was not, in fact, part of the pump as a relevant skilled person would understand it? Judge Friedman said that their evidence was that because you can take the pump apart, you can remove the faceplate, you can go through the label and remove one set of screws and take that off and then go in and remove another set of screws and then take those innards out to have what Judge Friedman found was a loose collection of parts. When you do that, you are then left with a housing. You are not left with a usable pump that is going to do anything. And that's what he found, is that based on the evidence that was provided, as opposed to attorney argument, that when you deconstruct the pump, you can't then just take an individual part, such as the housing, and say, okay, I'm now going to consider this to be something separate from the inflatable part. So when you say the district court reached this conclusion based on the evidence, are you saying that DWW didn't provide any evidence on this question of what elements are or are they just purely and exclusively only attorney argument? What they did not provide, what Judge Friedman pointed to that they didn't provide, and what was in attorney evidence. What did they provide? What they provided, yes, they have their demonstratives as opposed to pictures of the actual pump. They have their demonstratives where they color things up and they show in their opinion how things fit together. And they talk about what those different pieces are and what they do. But what they don't do, and I think this is the crux of what Judge Friedman was pointing out of what they didn't provide evidence, is that when you take the housing away, they did not provide any evidence in the record that when you take that away, that it will do what the claim requires, which is inflate the inflatable body. So yes, they did point at these various demonstratives and say, you have these different pieces and we think these different pieces are the pump. But they didn't show how those pieces would inflate the inflatable body. As opposed to the evidence provided by Intex was that you need the entire structure, the entire structure that both parties through this whole case have called pumps, that you need the entire pump to do what the claim requires, which is to inflate the inflatable body. So that is the first reason why Judge Friedman's opinion should be affirmed. The second and third reasons are based on the claim construction of socket. The second reason is that the pump housing, what it is that TWW says that when you take everything out of it and you have this loose collection of parts, that that is the socket. That pump housing does not fit and hold onto anything, let alone a pump. As shown at the summary judgment hearing and as documented in Judge Friedman's opinion, when you have those loose collections of parts and they're just sitting in the housing, as soon as you tip it over past horizontal, they all fall out. The third reason why Judge Friedman's opinion should be affirmed is that based on the definition of socket, this pump housing, what it is that TWW says is the socket, is not detachably connected to anything, let alone a pump. Why not? Their device has, what is it, eight screws. How is that not detachably connected? Neither the screwdriver can take it apart. Looking at this device, you have a pump that is connected to a socket. It's the entire pump that's connected to the socket. You have to disassemble all of those components to take all of those components off of what it is they say is the socket. It isn't just the fact that you have to use a screwdriver to take eight to 11 screws out depending on which pump model you're working with. That's one of the facts that Judge Friedman looked at, but that isn't it alone. It's that when you do that, when you strip this pump down to where it's all the internal components and the faceplate, what he called a loose collection of parts, inside the housing, there's no genuine dispute that someone is going to look at that and say that you have anything, let alone a pump, detachably connected to a socket. Is that your basis for distinguishing one of our cases that dealt with the question of whether one structure was detachably connected to another structure when they were fastened together by screws? Don't we have a case that says that can be detachably connected? There are two cases in the briefing on this issue, at least two cases. One is the Durrell case and the other one is the Millipore case. In the Durrell case, this court did find it was a two to one decision that for the limitation at issue there, which wasn't socket by the way, it wasn't looking at the issue in the context of a socket, but it was looking at a seat on a foundation as I recall. They said that it should be remanded so that you can determine whether there is any harm to the seat when it is removed by those screws. Well, here there is no genuine dispute at all about what it is that even TWW says is the pump, that there's harm done to it. It's just a loose collection of parts inside the socket. For that reason, Durrell does not point in favor of a remand in this case. The Millipore case is, I believe the term there was removable, replaceable that they were looking at. They looked at whether you could take this piece off as a whole. There, this court did affirm a summary judgment finding of no infringement based on whether it's removed as a whole. Once again here, nothing is removed as a whole. As Judge Friedman found, it's a loose collection of parts in the pump housing when you are done stripping everything off the housing. If we didn't agree with you in terms of the resolution of the detachable issue, either on the specific outcome as applied to this case, namely whether the accused device is potentially detachable or when the fact that the word detachable was required in the definition of socket, would you still prevail on the fit and hold issue such that the outcome would come out, would be the same regardless? Correct. There are three independent reasons. Okay. I just want to make sure I understood. Yes, absolutely. Detachable is one of the three reasons. There's also that housing when you strip it of all the components is not fitting and holding onto anything. Once again, when you have that loose collection of parts- You're saying you turn it upside down. Turn it upside down, it all falls out. It isn't fitting and holding onto anything. The first reason that I mentioned and that we discussed is that you have a pump. You don't have a separate pump and a socket. This court's case law doesn't allow you to go in and do things such as- Okay. Here's my question. Do you have kids? Absolutely. All right. Okay. Then you're going to know what I'm talking about. You know that toy that has a flat base and a post that comes up and a bunch of rings that gets smaller as it gets to the top and they're in various colors. I don't know a person who didn't own this toy at some point in their life. Wouldn't you say those rings fit on and that that post is holding those rings? I would not. What? Particularly in the context of a socket. I'm not talking about a socket. I'm talking about the post holding all those little rings. Aren't those rings fitting on that post? Isn't that post holding those rings? You wiggle it around, those rings aren't going anywhere. But if you turn it upside down, the rings fall off. You see where I'm going and you're trying to prevent where I'm going by saying you don't agree. But I don't see how that post isn't, how those rings aren't fitting on that post and how that post is not holding those rings. Yeah, I understand. And I think that that example is analogous to what I would consider to be a coin holder or a pin holder or a cereal bowl holding cereal. Yes, it is a holder. It's holding it. But it is not in the context of a socket. And when you look at the, just even the dictionary definitions of socket, let alone looking at the difference between socket and chamber, how those were used in the specification and the restriction requirement and the fact that the socket claims were pursued, the chamber claims were not pursued. When they were pursued, they weren't even allowed. So I think that your example is an example more akin to a pin holder. You're going to say my example is pedestrian or juvenile, are you? I won't comment on that. But it is not an example of somebody looking at that post to hold those rings as a socket. Okay. Anything further? If not, let's hear from opposing counsel. A little bit of time left for rebuttal. Thank you, Your Honor. I'm sorry, I didn't catch that. How much time do I have? I don't know. I'm waiting for her to put it back on. How much time did he have left? Oh, nothing? Oh, then, yeah, go ahead and give him three minutes. How about that? Thank you, Your Honor. Just to address this evidentiary issue because our expert was consistent and clear from 2006 onward as to what maps to what in the claims to the suggestion that this is all attorney argument, I would direct the court to the record at A1273 to 74 for discussion of the pump A motor and what maps to what. Also A2199 for the pump B motor. Our expert analyzed that at A1271, discussed the operation at A1272 and also at A2198. This evidence was all in front of the court. Our expert considered what components of these accused products perform the claimed function, the undisputed function of the electric pump. Is it an electrically powered machine or device for raising, compressing, or transferring fluids, including gases? Just thought I'd ask you. So is there somewhere in these statements that expressly says the innards by themselves without any kind of housing or chamber or base plate can by itself inflate the air mattress? Where is that statement? So if I could take you to, for example, A1273 to A1274. This is our expert's report from 2006. He says in paragraph Roman at three, he says, the socket is shown in green in figure 6010. That's what they like to call the housing. It says the products contain an electric pump used to inflate and deflate the mattress. It says the electric pump is shown in multiple colors in these figures and he goes through and sort of color codes exactly what they are. I mean, and to call them innards is, that's their semantic narrative. And I understand why they say that. But these are innards in the very same way that the socket in the embodiment, I'm sorry, the pumps in the very embodiments in the patents, they're innards too. I mean, they get inserted into cups and wells and rings just as theirs do. Are all of the pieces of the pump disregarding the housing sufficiently connected to each other that you can take the whole thing out as a unit, leaving the housing inside? Your Honor, you would have to sort of, generally speaking, you're going to pull them out as separate subcomponents. That's sort of the most direct way I can think to answer that question. But isn't that something like at the core of their point about this? Well, I don't think so, and I don't think that it's germane. The claims here are clear. They say it's an electric pump connected to the socket. This is not like the Millipore case, which was concerned with the state of the part after it was removed because that's what the claim contemplated. The claim also says including a pump body. Yes. So what's the body here? Well, the body is being construed as the main part of the pump, and I'm glad you asked that question, Judge Schoen, because the district court in the claim construction concluded, found, that no housing was required for the electric pump. And yet here their non-infringement argument centers on the existence of what they call housing. But if one looks at these components, I mean, there's a unitary motor and impeller unit that sits in the socket. And when you pull it out, you still have a unitary motor and impeller unit. And if you apply electrical current to the little tabs that stick out of there, the fan will spin, and it will convey air from one hole of that impeller housing. There's a little housing that surrounds that impeller fan. It will convey air from one port to the other. There's no fundamental distinction here between the way that their device works and the way, frankly, that the embodiments work in our patents. Okay, Mr. Glickstein, I think we have your argument. The case is taken under submission. We thank both counsel. This concludes our proceedings for today. All rise. The Honorable Court is adjourned until tomorrow morning at 10 a.m. The Court is adjourned. Thank you.